SARAH SOLOMON, as Administratrix, etc., of JOSEPH SOLOMON, Deceased, Respondent, *v.* THE MANHATTAN RAILWAY COMPANY, Appellant.

*Negligence — to attempt to board a moving train on the elevated railroad is contribu-*
*tory negligence.*

One of the defendant's trains on its elevated railway had reached and was about leaving the Chatham Square station on Second Avenue, on the evening of December ninth, when the deceased with other persons hastened from another train to get on board ; as they came running up for that purpose, the gate on the platform of the car was closed and the train started to leave the station. It was moving, but slowly, when two persons, running in advance of the deceased, pushed open the closed gate and boarded the car. The deceased also attempted to get on, but at that moment the conductor, while the deceased, having one foot on the platform, was stepping on the car, again closed the gate; that foot was caught by the gate so that the deceased was carried along a short distance by the moving car until struck by a projecting water pipe on the station building, by which he was knocked from the car upon the track below and fatally injured.

*Held,* that he was guilty of contributory negligence in attempting to get on a moving train ; and that such contributory negligence prevented his administrators from maintaining an action to recover the damages occasioned by his death.

That even if the conductor was guilty of negligence in closing the gate, when he saw that the deceased persisted in attempting to get on the train, yet as this negligence could not have happened but for the prior negligent act of the deceased it did not authorize a recovery, there being no claim that the defendant was guilty of any willful wrong, or took advantage of the deceased's negligent exposure of his foot, to entrap and purposely injure him.

Appeal from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*R. E. Deyo,* for the appellant.

*Geo: Putnam Smith,* for the respondent.

Davis, P. J.:

This action was brought to recover damages for injuries resulting in death, received by plaintiff's intestate while attempting to get on

board a train of the appellant.. There is no controversy in the evidence as to the fact that the train was in motion when the deceased attempted to get on board. He, with several other persons, had come up on the Third avenue cars from the City Hall station to the Chatham Square station, and were hastening to catch the train on the Second Avenue road, at that junction. To do this they were to ascend one flight of stairs and descend another, beside passing some little distance on the platforms. The Second Avenue train was coming up as the passengers left the other train, and it appears they ran over the stairs with the intention of catching the train then at the station. Some of them succeeded; but the evidence shows that as deceased ran down the stairs, with two persons in advance of him, the gate of the Second Avenue car was closed, and the train started. The two persons in advance pushed open the gate and got on board the moving train; the deceased attempted to get on board, but at the same moment the conductor again closed the gate, and the foot of the deceased was caught by the gate so that he was carried along several feet till, at the end of the platform, he was struck by the iron water pipes descending from the roof of the station and knocked from the car, and received such injuries that his death resulted therefrom. The incident occurred on the evening of the 9th of December, 1881, at seven o'clock and two minutes. Another train was due at the station in four minutes. There was no occasion for great haste or urgency on the part of the deceased, except that his son, who was going home at the same time, had succeeded in boarding the train. The learned judge who tried the case, seemed, as appears by his charge, to have been under the impression that there was a controversy as to the fact whether the train was moving when the deceased attempted to board it, for he said to the jury : " To attempt to board a train while in motion would be an act of negligence. It has been so held by the court; but the plaintiff claims that when the intestate attempted to board the train it was not in motion; that the gate was open, and as he put one foot upon it the gate was shut and he was thrust out. The defendant has given an entirely different version of the affair, and it is for you to say which theory of the case you will adopt in rendering a verdict." The judge had already charged that the jury must " be satisfied that the person who was killed was without fault

or negligence, or if there was the least fault or negligence on his part which contributed to the injury, even though the defendant's agents were guilty of negligence, the plaintiff cannot recover."

This was a correct statement of the law as settled in this State by numerous authorities. It is also well settled that an attempt to board a railway train while the cars are in motion is contributory negligence, if injury results from such attempt; and that no recovery can be had for the injury. (*Phillips* v. *Rensselaer, etc., R. R. Co.*, 49 N. Y., 177; *Burrows* v. *Erie R. R. Co.*, 63 N. Y., 556.)

There being no controversy in the case on the question whether or not the train was in motion to leave the station, when the deceased attempted to board it, it seems manifest that the learned judge gave to the jury an issue not really in the case, when he stated to them the claims of the respective parties; and the other portions of the charge show that he must have been under a misapprehension as to the evidence, or he would have directed a verdict for the defendants.

The cars were certainly in motion, in the act and for the purpose of leaving the station, when the deceased made his attempt to get on board; the only controversy was whether the gate was open at that moment, and whether the conductor's act of closing the gate defeated the attempt and caused the injury.

It would be our duty to order a new trial because of the submission of an unsupported issue to the jury; but the case presents a question of law which should not be evaded. That question is whether upon the whole case it was not the duty of the court to have directed a verdict for the defendant. The case which the evidence presents is this: The defendant's Second Avenue train on the elevated railway had reached and was about leaving the Chatham Square station; the deceased with other persons were hastening from another train to get on board; but as they came running up for that purpose the gate on the platform of the car was closed and the train started to leave the station. It was moving, but slowly, when two persons running in advance of the deceased pushed open the closed gate and boarded the car; the deceased also attempted to get on, but at that moment the conductor again closed the gate while the deceased was stepping on the car having one foot on the platform; that foot was caught by the gate so that the deceased was carried along a short distance by the moving car until struck

by a projecting pipe of the station by which he was knocked from the car upon the track below and fatally injured.

On this state of facts it is apparent that there was no negligence on the part of the defendants in the closing of the gate *at first*, and starting the train. The deceased and others, though running to catch the train, were too late to do so before the gate was closed and the train started. When they saw that state of things their duty was to stop and wait for the next train, only five minutes later. To attempt to force open the gate and get on the moving train was not only a violation of the rules of the railroad company, but gross negligence on the part of the persons who succeeded in doing it. Up to that point there was no ground for charging the defendant with negligence; and at that point the conductor's duty was to close the gate and prevent other persons from exposing themselves to the special danger that attends the boarding of a moving train on that class of railroads. When he attempted to perform that duty the deceased was attempting to get on board. The deceased could not fail to know that the cars were moving, but he doubtless supposed he could safely board them. Still there was manifest risk in his act, and it was therefore clearly a negligent act. Concede that if the conductor saw his persistence in attempting to get on board, it was negligence to close the gate to prevent its success; yet that negligence could not have happened but for the negligent act of the deceased in endeavoring to board a moving train. It required in any view a concurring negligence to produce the conditions which led to the injury. Which of the two was most negligent is an unimportant inquiry, because it is apparent that the injury would not and could not have happened but for some concurring negligence of both. However great the negligence might have been on the part of the conductor, yet if the negligence of the deceased contributed in any degree it is fatal to a recovery. (*Wild* v. *The Hudson R. R. R. Co.*, 24 N. Y., 430; *Owen* v. *The Hudson R. R. R. Co.*, 35 id., 516.) It is not claimed that the defendant was guilty of any willful wrong, as that it took advantage of the negligent exposure of defendant's foot to be caught by the gate, to entrap and purposely injure him. The catching of the foot was doubtless an incidental accident which would not have occurred in many similar cases, yet which, in this case, happened to occur because of

the deceased's attempt to do what he ought not to have done, to get on a train after it had started from the station. It is impossible not to see that, whatever negligence there was in this case chargeable to the defendant, there was also mutual and contributory negligence, without which no injury would have happened to the deceased. But for his persistence in attempting to get on board a moving train, no improper or negligent act of the conductor in shutting the gate would have injured him; or, in other words, the negligence of the deceased put him in a position where the negligence of the defendant's servant produced the injury which resulted in the fatal injury

While the elevated railroads are to be held to strict responsibilities, it cannot be too strongly impressed upon the minds of all persons who make daily use of the elevated railway trains that their duty to themselves, as well as to the railway company, is to obey the reasonable rule of law and of good sense *that forbids all attempts to board a moving train.* The act is none the less dangerous because it is often done with impunity. When the train is in motion, whether the platform gates are closed or not, more or less risk of danger always accompanies an attempt to get on board the cars.

The law must hold the taking of that risk by a passenger to be negligence, because it is an imprudent exposure to danger of serious injury. To accomplish "rapid transit," a great and now indispensable convenience to an active and busy population, the trains must not only be frequent and travel speedily, but must stop and start quickly, otherwise great frequency of trains would be impracticable. They who find a train already moving away from a station and think the few minutes before the next train of more value than safety from danger, must understand that in law they take life and limb into their own keeping when they violate the reasonable rule that charges the risk of negligent exposure upon themselves. The law is thus established by the highest courts and our simple duty is to respect and apply it. The court in this case should have directed the verdict for the defendant.

The judgment must therefore be reversed and new trial granted, with costs to abide the event.

DANIELS, J., concurred; BRADY, J., concurred in the result.

Judgment reversed, new trial granted, costs to abide event.